UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARATHON PETROLEUM COMPANY,
LLC, a Delaware limited liability company,

       Plaintiff/Counter-Defendant,

Case No.: 05-cv-74764
Judge Lawrence P. Zatkoff

       v.

23 & ROMEO STATION CORPORATION,
a Michigan Corporation, COMMERCIAL
PROPERTIES DEVELOPMENT, LLC, a
Michigan limited liability company and
EDDIE JAWAD, an individual,

       Defendants/Counter-Plaintiffs.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on August 30, 2006

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on Defendants/Counter-Plaintiffs' Motion for Partial Summary Judgment (Docket #8) and Plaintiff/Counter-Defendant's Counter-Motion for Dismissal of Counts II and III of the Counterclaim (Docket #12). The parties have filed their respective response and reply briefs. The Court finds that the facts and legal arguments pertinent to the parties' Motions are adequately presented in the parties' papers, and the decisional process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED

that the Motions be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons set forth below, Defendants/Counter-Plaintiffs' (hereinafter "Defendants") Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART, and Plaintiff/Counter-Defendant's (hereinafter, "Plaintiff") Motion for Dismissal of Counts II and III of the Counterclaim is DENIED.

## II.  BACKGROUND

Marathon Petroleum Company, LLC (hereinafter "Plaintiff") brought a breach of contract, unjust enrichment and promissory estoppel action against the defendants, Eddie Jawad ("Jawad"), 23 & Romeo Station Corporation ("23 & Romeo"), and Commercial Development Properties, LLC ("CPD"). Jawad was the President of 23 & Romeo and CPD.  Plaintiff's claims arise from a relationship between Plaintiff and one or more of the Defendants pursuant to which Plaintiff would sell gasoline to one or more of the Defendants who in turn would sell such gasoline to the public at a gas station.  In connection with that relationship, a number of documents were signed, including the following:

(1) a 11/25/97 "Improvement Agreement" between Pumper, Inc., ("Pumper"), S & G Holdings, LLC ("S & G"), and Plaintiff;

(2) a 4/12/00 "Amendment to Improvement Agreement" entered into between Pumper, S & G, and Plaintiff ("Amendment");

(3) a May 12, 2000 "Agreement and Assignment of Interest under Improvement Agreement and Assignee's Undertaking to Perform" ("Agreement and Assignment") between Pumper, S & G, 23 & Romeo, CPD, and Plaintiff; and

(4) a 5/1/04 Seller Agreement between Plaintiff and 23 & Romeo.

The Defendants filed counterclaims against Plaintiff (a) seeking a declaratory judgment that the

Seller Agreement supercedes the other agreements, (b) requesting an accounting of amounts paid under the documents signed by Pumper and S & G, (c) alleging fraud, misrepresentation and mutual mistake by Plaintiff regarding amounts in the Agreement and Assignment, and (d) alleging Plaintiff breached contract/anticipatory breach of the Agreement and Assignment and other documents.

### III. STANDARD OF REVIEW

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings, combined with any affidavits in support show that no genuine issue as to any material fact remains and that the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56©). A genuine issue of material fact exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324. The nonmoving party must do more than show that there is some metaphysical doubt as to

Seller Agreement supercedes the other agreements, (b) requesting an accounting of amounts paid under the documents signed by Pumper and S & G, (c) alleging fraud, misrepresentation and mutual mistake by Plaintiff regarding amounts in the Agreement and Assignment, and (d) alleging Plaintiff breached contract/anticipatory breach of the Agreement and Assignment and other documents.

### III. STANDARD OF REVIEW

Summary judgment is appropriate only if the answers to the interrogatories, depositions, admissions, and pleadings, combined with any affidavits in support show that no genuine issue as to any material fact remains and that the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56©). A genuine issue of material fact exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324. The nonmoving party must do more than show that there is some metaphysical doubt as to

the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Phillip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

## IV.  ANALYSIS OF DEFENDANTS' MOTION

**A.     Procedural Defect**

Plaintiff notes that Defendants failed to seek Plaintiff's concurrence prior to filing the Motion for Partial Dismissal, as required by E.D. Mich. LR 7.1(a); however, Plaintiff does not ask the Court to dismiss the Defendants' Motion for Partial Summary Judgment on that basis. Plaintiff contends that, had Defendants complied with Local Rule 7.1 and sought such concurrence, Defendants would have known that Plaintiff is not pursuing a cause of action for breach of the Seller Agreement by CPD (as discussed briefly in Section IV.B.2 below).

The Court finds that Defendants' failure to seek concurrence in this case has resulted in minimal prejudice to Plaintiff. Most significantly, Defendants could have refiled the motion for partial summary judgment even if the Court struck Defendants' Motion for Partial Summary Judgment for failure to comply with LR 7.1(a). The Court does find, however, that Plaintiff had to spend a minimal amount of time addressing the claim that CPD breached the Seller Agreement in its response. Accordingly, the Court ORDERS that Defendants pay Plaintiff the amount of $100.00 to cover the attorney fees incurred by Plaintiff in having its attorney respond to this issue.

**B.     Breach of Contract Claims**

   *1.     Against Jawad*

Defendants argue that breach of contract claims (Counts I and II of Plaintiff's Complaint) should be dismissed against Jawad because he is not a party to any of the written agreements at issue in this case. The Court has reviewed the various written agreements and determined that Jawad never signed any of them in his individual (personal) capacity. It is undisputed that Jawad signed the Agreement and Assignment and the Seller Agreement as "Member" and "President" of 23 & Romeo and CPD, respectively. In addition, the Court notes that there is no evidence (or even any allegation by Plaintiff) that Jawad ever executed a personal guaranty of the obligations assumed by 23 & Romeo and S & G.

In Michigan, a breach of contract requires mutual assent to all the essential terms and, above all, an offer, acceptance, and consideration. *See Kamalnath v. Mercy Memorial Hosp. Corp.*, 194 Mich.App. 543, 548-49 (1992). As indicated, Jawad signed the Agreement and Assignment and the Seller Agreement in his capacity as agent. Jawad did not, however, sign any of the documents in his individual capacity, nor did he guaranty any of the documents. "Unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract."*Riddle v. Lacey & Jones*, 135 Mich.App. 241, 246 (1984), quoting 2 RESTATEMENT AGENCY, 2D, § 320, p 67.

Plaintiff argues that there is an exception to the *Riddle* rule when the facts establish that the person signing the contract is liable. Plaintiff relies on the case of *Irrevocable Trust v. S.E. Michigan Law Assoc.*, 2006 Mich.App. LEXIS 382 (February 14, 2006), but the facts of that case are wholly distinct from those in the instant case. In *Irrevocable Trust*, there was a dispute between

5

the landlord/lessor (Irrevocable Trust) and the tenant/lessee (S.E. Michigan Law Associates). The parties agreed to settle their differences and enter into a new lease. Among the terms of the new lease was a provision that stated, "the lease shall be personally guaranteed by the members of the Lessee." The lease was signed by two of the members of the Lessee (defendants Webber and DelBoccio). Eventually, the Lessee defaulted on the lease. In finding that Webber and DelBoccio were liable, the *Irrevocable Trust* court held:

> The February 2004 lease names defendant law firm as the "Lessee." The lease specifically states that "the lease shall be personally guaranteed by the members of the Lessee." Defendants Webber and DelBoccio do not dispute that they were members of defendant law firm at the time that the lease was executed. Therefore, under the explicit terms of the lease, defendants Webber and DelBoccio agreed to become liable.

2006 Mich.App. Lexis 382, at *15 (February 14, 2006) (unpublished) (emphasis added).

As the *Irrevocable Trust* court makes clear, however, it is not the fact that Webber and DelBoccio signed the lease that makes them potentially liable, it is the fact that they were members of the law firm (Lessee). As the lease specified that the members of the law firm were personally guaranteeing the lease, they were liable. No such guarantee of Jawad was included in any of the agreements in this case.

In addition, Plaintiff's argument that the Rider to the Seller Agreement constitutes a personal guaranty of Jawad is completely without merit. The Rider simply provides a number of conditions that require notice to Plaintiff in the event Jawad is no longer connected to 23 & Marathon. There is no language whatsoever that could be interpreted as obligating Jawad to Plaintiff in any manner, let alone any language that suggests that Jawad is personally guaranteeing the obligations of any of the other Defendants.

6

Plaintiff argues in its brief that Jawad may be an alter ego of the other Defendants, but this argument lacks any merit. Alter ego claims require proof of three elements: first, the corporate entity must be an instrumentality of another; second, the corporate entity must be used to commit a fraud or wrong; and, third, there must have been an unjust loss or injury to the plaintiff. *Nogueras v. Maisel & Assoc.,* 142 Mich.App. 71, 86 (1985). Plaintiff has not, however, submitted any pleadings on the issues of fraud or alter ego. *See* Fed. R. Civ. P. 9(b).

For the reasons set forth above, the Court finds, as a matter of law, that Plaintiff cannot recover on its breach of contract claims against Jawad. Accordingly, the Court holds that Counts I and II of Plaintiff's Complaint are dismissed as to Jawad.

    *2.    Against CPD*

Defendants argue that Plaintiff's suit against CPD for breach of the Seller Agreement must be dismissed because CPD is not a party to the Seller Agreement. Plaintiff's response agrees with Defendants' contention. Accordingly, the Court concludes that this issue is MOOT.

**C.    Unjust Enrichment and Promissory Estoppel**

Defendants argue that Counts III and IV of Plaintiff's Complaint seek damages for promises and duties that arise explicitly out of contract. With respect to the "unjust enrichment" claim in Count III, Defendants argue that there is no need for equity to imply a contract because contracts already exist which govern the subject matter. With respect to the promissory estoppel claim in Count IV, Defendant argues that all the "promises" listed by Plaintiff in its Complaint are explicitly governed by contract provisions. Defendants further argue that any of these alleged promises, to the extent they exist outside of the documents, could not be relied on by Plaintiff because: (i) the contracts contain integration clauses, (ii) would have to be in writing, and (iii) would be barred by

parol evidence.

Defendants' arguments may be sensible at a later stage of this case. On the pleadings, however, Fed. R. Civ. P. 8(a) allows a plaintiff to assert seek "[r]elief in the alternative" and to plead alternative theories of recovery, including equitable relief. *See also, Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.*, 96 F.3d 174, 181-82 (6th Cir. 1996). As discovery has not sufficiently evolved for the parties to ascertain whether Counts I and II (breach of contract) or Counts III and/or IV (unjust enrichment and promissory estoppel) constitute the parties' best claims/defenses, it would be premature for the Court to dismiss any of Plaintiff's theories at this time.

Accordingly, Defendants motion is denied, without prejudice, with respect to Plaintiff's claims for unjust enrichment and promissory estoppel in Counts III and IV, respectively.

## V. ANALYSIS OF PLAINTIFF'S MOTION

Counts II and III of Defendants' Counterclaim seek to have the Agreement and Assignment declared invalid based on a theory that the amount due and owing set forth therein was the wrong amount (approximately $343,000 in the signed Agreement and Assignment vs. approximately $214,000 in the Amendment). Plaintiff argues that such Counts should be dismissed at this time because Defendants allege in Count I of the Counterclaim (and argue throughout their Brief in Support of Motion for Partial Summary Judgment) that the contracts at issue govern this action and the provisions of such contracts are controlling. Plaintiff contends that Defendants' allegations and arguments constitute admissions that are binding on them and that the theories of judicial waiver and estoppel require dismissal of Counts II and III.

"[I]n order to qualify as judicial admissions, an attorney's statements must be deliberate,

8

clear and unambiguous." *United States v. Burns*, 109 Fed.Appx. 52, 58 (6th Cir. 2004) (quoting *McDonald v. GMC*, 110 F.3d 337, 340 (6th Cir. 1997)). In this case, as noted by Defendants, the statements relied upon by Plaintiff "were made in the context of assuming the existence and validity of contracts for purposes of" Defendants' Motion for Partial Summary Judgment. In fact, much like Plaintiff's alternative theory pleading in its Complaint, Defendants' allegations and arguments to date have alternated depending on the claims it was defending/pursuing. Accordingly, the Court rejects Plaintiff's argument that Counts II and III of Defendants' Counterclaim should be dismissed because of Defendants' alleged admissions.

Plaintiff also argues that judicial economy mandates a dismissal of Counts II and III of the counterclaim because a party "who signs a contract cannot seek to avoid it on the bases that he did not read it or that he supposed that it was different in its terms." *Stopcynski v. Ford Motor Co.*, 200 Mich.App. 190, 193 (1993) (citing *Paterek v. 660 Limited*, 186 Mich.App. 445, 450 (1990)). Plaintiff notes that the Michigan Supreme Court has long held that "[t]o allow persons of intelligence and mature age to repudiate their written contracts, which they have an opportunity to read before signing and can read, would lend uncertainty to business transactions and render the making of contracts unsafe." *Draeger v. Kent County Sav. Ass'n*, 242 Mich. 486, 490 (1928).

Defendants do not argue that Jawad (as President of 23 & Marathon and CPD) could not read or understand the Agreement and Assignment or the Seller Agreement or that they did not have an opportunity to review the Agreement and Assignment (and the Amendment incorporated therein) prior to Jawad signing it. Defendants do, however, contend that Plaintiff engaged in fraud and/or that there was mutual mistake of the parties as to the increased amount in the Agreement and Assignment. Defendants allege in Count II that:

9

61. The amounts alleged to be owed by Pumper and S & G, as stated in the Amendment, are incorrect and/or were misrepresentations, and/or have no reasonable foundation.

62. The amounts alleged to be owed by Pumper and S & G, as stated in the Agreement and Assignment, are incorrect and/or were misrepresentations, and/or have no reasonable foundation.

\* \* \* \* \*

65. Marathon has provided no explanation as to how the alleged amounts owing as of December 1, 1999 ($235,050.00) increased to $357,060.00 as of May 1, 2000 (an increase in excess of $120,000.00 in six months).

In Count III, Defendants alleged that:

69. The $235,050.00 figure, which was set forth in the Amendment, and was represented as owing to Marathon as of December 1, 1999, was incorrect and was either fraudulently represented or represented a mutual mistake of the parties thereto.

70. The $357,060.00 figure, which was set forth in the Agreement and Assignment, and was represented as owing Marathon as of May 1, 2000, was incorrect and was either fraudulently represented or represented a mutual mistake of the parties thereto.

71. The above misrepresentation(s) or mutual mistake(s) induced Counter-Plaintiffs to enter into an agreement which they would not have otherwise entered into but for the misrepresentation(s) or mutual mistake(s).

72. Prior to the execution of the Agreement and Amendment, Marathon and/or its agents represented to Counter-Plaintiffs and/or Jawad that the total amounts owing to Marathon totaled $235,050.00.

73. Marathon and/or its agents drafted the Agreement and Assignment, which, while incorporating the Amendment, included a clause in the Agreement and Assignment that stated that the total amounts owing Marathon was

>      $357,060.00.
>
> 74.   The above actions by Marathon constituted fraud in the inducement, which entitles Counter-Plaintiffs to elect the remedy of rescission. In the alternative, the above constituted a mutual mistake of the parties, which means that no contract could have been formed and that the same must be held for naught.

As noted by Defendants, the entirety of what the *Paterek* court said regarding the execution of contracts is that "one who signs a contract cannot seek to invalidate it on the basis that he or she did not read it or thought that its terms were different, *absent a showing of fraud or mutual mistake*." *Paterek*, 186 Mich.App. at 450 (emphasis added). Moreover, the Michigan Supreme Court has modified its holding in *Draeger* when fraud is involved, such that "when the neglect to read is not due to carelessness alone, *but was induced by some stratagem, trick, or artifice on the part of the one seeking to enforce the contract*[,]" the rule in *Draeger* would not apply. *See International Trans. Ass'n v. Bylenga*, 254 Mich. 236, 239 (1931) (emphasis added). *See also, Komraus Plumb. & Heat., Inc. v. Cadillac Sands Motel, Inc.*, 387 Mich. 285, 290-91 (1972). Accordingly, the Court finds that the law cited by Plaintiff does not support the dismissal of Defendants' claims if fraud or mutual mistake, as alleged, are present.

To date, the parties have engaged in limited discovery. The Court finds that it would be premature to dismiss Counts II and III of Defendants' Counterclaim before Defendants have an opportunity to conduct discovery to determine if they can sustain their claims in Counts II and III. Accordingly, Plaintiff's Motion for Dismissal of Counts II and III of the Counterclaim is denied without prejudice.

## VI. CONCLUSION

Accordingly, and for the reasons above, Defendants' Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART, and Plaintiff's Motion for Dismissal of Counts II and III of the Counterclaim is DENIED.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated:  August 30, 2006

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on August 30, 2006.

s/Marie E. Verlinde
Case Manager
(810) 984-3290